1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUND ELECTRICAL WORKERS HEALTHCARE TRUST ET AL., | CASE NO. 2:23-cv-00541-JHC |
| Plaintiffs, | ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |
| v. | |
| CHAU ELECTRIC LLC, | |
| Defendant. | |

**I**

**INTRODUCTION**

This matter comes before the Court on Plaintiffs Puget Sound Electrical Workers

Healthcare Trust, Puget Sound Electrical Workers Pension Trust, Puget Sound Electrical

Workers 401(k) Savings Plan Trust, and Puget Sound Electrical Joint Apprenticeship and

Training Trust's (collectively, "Trust Funds") Motion for Default Judgment against Defendant

Chau Electric LLC.  Dkt. # 12.  The Court has considered the motion, the record, and the

applicable law.  Being fully advised, the Court GRANTS the Motion.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 1

## II

### BACKGROUND

The Trust Funds are jointly administered labor-management employee-benefit trust funds.  *See* Dkt. # 12 at 1.  They provide health and welfare, retirement, and training benefits under the Employee Retirement Income Security Act of 1974 ("ERISA").  *Id*.

Defendant Chau Electric is a Washington limited liability company with its principal place of business in King County, Washington.  Dkt. # 1 at 2.  Chau Electric executed a Letter of Assent with the City of Seattle for the Ship Canal Water Quality Project Tunnel Storage PW #2018–018 Project.  *See* Dkt. # 13 at 9–13.  The Letter of Assent provides that any signatory to the Letter agrees to be bound by the terms of the Community Workforce Agreement.  *See* Dkt. # 1 at 3, 13.  The Community Workforce Agreement binds Chau Electric to the Trust Funds' trust agreements, which are incorporated into the Community Workforce Agreement by reference.  *See* Dkt. # 13 at 13, 22; *see also* Dkt. # 1 ¶¶ 3.1–3.5.

The Community Workforce Agreement and the trust agreements (collectively, "the Agreements") require Chau Electric to submit monthly fringe benefit contribution payments (along with remittance reports) to the Trust Funds' administration office no later than the fifteenth of each month following the month in which the hours were worked.  *See* Dkt. # 1 ¶ 3.6; *see also* Dkt. # 13 at 76, 116, 150, 177.  If Chau Electric fails to submit the contributions by the deadline, the Agreements allow the Trust Funds to collect liquidated damages, interest, attorney fees, and other costs of collection (like court fees).  *See* Dkt. # 1 ¶¶ 3.7–3.10.

According to the complaint, Chau Electric did not fulfill its obligations under the Agreements.  *See* Dkt. # 13 at 4–5.  First, Chau Electric submitted its November 2022 contributions and remittance reports nearly three months late on March 9, 2023.  Therefore, for November 2022, Chau Electric owes $4,374.37 in liquidated damages and $1,117.47 in interest.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 2

*Id.*  Second, Chau Electric submitted its December 2022 contributions and remittance reports two months late on March 15, 2023.  *Id.* at 5.  Therefore, for December 2022, Chau Electric owes $3,490.38 in liquidated damages and $626.48 in interest.  *Id.*  Third, Chau Electric submitted its March 2023 remittance reports nearly two weeks late on April 28, 2023, and no contribution payments were made with the report.  *Id.*  Therefore, for March 2023, Chau Electric owes $39,198.52 in contributions, $3,905.58 in liquidated damages, and $740.66 in accrued interest as of June 16, 2023.  *Id.* at 191.

On April 7, 2023, the Trust Funds filed this lawsuit,[1] asserting one cause of action for breach of the Agreements and one cause of action under Section 515 of ERISA.  Dkt. # 1.  On April 16, 2023, Chau Electric was served by personal service on the company's registered agent, Natalie Dinh.  *See* Dkt. # 8.  After being properly served, Chau Electric failed to appear, and the Trust Funds moved for and obtained an order of default.  *See* Dkt. # 11.  Plaintiffs now move for default judgment.  *See* Dkt. # 12.  They seek to recover Chau Electric's unpaid contributions to the Trust Funds, liquidated damages, interest on the unpaid contributions, attorney fees, and collection costs as provided by the Agreements and 29 U.S.C. § 1132(g)(2).  *Id*.

### III

#### DISCUSSION

A.      Legal Standards

If a defendant fails to plead or otherwise defend, "the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Then, upon a plaintiff's request or motion, the court may grant default judgment for the plaintiff.  Fed. R. Civ. P. 55(b)(2); *see also Aldabe v. Aldabe*, 616 F.2d

---

[1] This is not the first dispute between these parties.  A nearly identical default-judgment motion for unpaid contributions and fees was recently resolved by another judge of this Court.  *See Puget Sound Elec. Workers Healthcare Tr. v. Chau Elec. LLC*, No. 2:22-CV-01190-TL, 2023 WL 2873814 (W.D. Wash. Mar. 22, 2023).

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 3

1   1089, 1092 (9th Cir. 1980).  On default judgment motions, "[t]he court must accept all well-pled

2   allegations of the complaint as established fact, except allegations related to the amount of

3   damages."  *UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1133 (W.D. Wash. 2019)

4   (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).  Courts

5   typically consider these seven factors (often called the "*Eitel* factors") when evaluating a request

6   for a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
> substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at
> stake in the action; (5) the possibility of a dispute concerning material facts; (6)
> whether the default was due to excusable neglect, and (7) the strong policy
> underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

10   *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  Because default judgments are

11   disfavored, "[d]efault judgment is appropriate only if the well-pleaded factual allegations of the

12   complaint suffice to establish a plaintiff's entitlement to a judgment under the applicable law."

13   *Dentist Ins. Co. v. Luke St. Marie Valley Dental Grp., P.L.L.C.*, No. 2:21-cv-01229-JHC, 2022

14   WL 1984124, at *2 (W.D. Wash. June 6, 2022) (citing *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d

15   847, 855 (9th Cir. 2007)).

16   B.       Application of *Eitel* Factors

17          All seven *Eitel* factors support the Trust Funds' motion.  Default judgment is therefore an

18   appropriate remedy in this case.

19          1.       Prejudice to Plaintiffs

20          "[P]rejudice exists where the plaintiff has no recourse for recovery other than default

21   judgment."  *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1211, 1211 (W.D. Wash. 2014)

22   (citation and internal quotation marks omitted).  Chau Electric has failed to respond to this

23   action, so default judgment is the Trust Funds' only means for recovery.  *See Eve Nevada, LLC*

24   *v. Derbyshire*, Case No. 21-0251-LK, 2022 WL 279030, at *3 (W.D. Wash. Jan. 31, 2022); *Bd.*

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 4

1   *of Trs. of U.A. Loc. No. 159 Health and Welfare Tr. Fund v. RT/DT, Inc.*, No. C 12-05111 JSW,

2   2013 WL 2237871, at *4 (N.D. Cal. May 21, 2013) ("Because ERISA provides that federal

3   courts have exclusive jurisdiction for claims of this nature, denial of Plaintiffs' Motion would

4   leave them without a remedy."). Thus, this factor supports default judgment.

5          2.      Merits of Plaintiffs' claims and sufficiency of complaint

6          "Courts often consider the second and third *Eitel* factors together." *Developers Sur. and*

7   *Indem. Co. v. View Point Builders, Inc.*, No. C20-0221JLR, 2020 WL 3303046, at *5 (W.D.

8   Wash. June 17, 2022). The Trust Funds contend that Chau Electric failed to pay employee

9   contributions as required by the Agreements and ERISA and is therefore liable for unpaid

10  contributions and associated late fees like liquidated damages, interest, and attorney fees. *See*

11  Dkt. # 12.

12         Under Section 515 of ERISA, employers must pay required contributions "under the

13  terms of the plan or under the terms of a collectively bargained agreement." 29 U.S.C. § 1145.

14  To establish a Section 515 claim for unpaid contributions, Plaintiffs must show that "(1) the trust

15  fund is a multi-employer plan as defined by 29 U.S.C. § 1002(37); (2) the defendant is an

16  employer obligated to contribute under the plan's terms; and (3) the defendant failed to

17  contribute in accordance with the plan." *Bd. of Trustees of Sheet Metal Workers Health Care*

18  *Plan of N. California v. Gervasio Env't Sys.*, No. C 03-04858 WHA, 2004 WL 1465719, at *1

19  (N.D. Cal. May 21, 2004). If a plaintiff brings an action under Section 515 and secures a

20  favorable judgment, the court awards the plaintiff damages in accordance with 29 U.S.C.

21  § 1132(g)(2).

22         As noted above, for purposes of this motion, the Court accepts all well-pleaded

23  allegations in the complaint as true. *See UN4 Prods*, 372 F. Supp. 3d at 1133. Accepting such

24  allegations, the complaint suffices to state a claim against Defendant. The Trust Funds are multi-

employer plans under 29 U.S.C. § 1002(37), and Defendant is an employer obligated to contribute to the Trust Funds under the Agreements.  *See* Dkt. # 13 at 22; *see also* Dkt. # 1 ¶¶ 1.2–1.4, 3.1–3.5.  The record reflects that Defendant was late in paying its contributions in November 2022 and December 2022, so it owes liquidated damages and interest.  *See* Dkt. # 13 at 189–90.  The record similarly reflects that Defendant has not yet paid its March 2023 contributions and associated liquidated damages and interest.  *See* Dkt. # 13 at 185–86, 191. Therefore, Plaintiffs have established a claim for unpaid contributions and late fees.  The second and third *Eitel* factors support default judgment.

3.      Sum of money at stake

This factor "considers whether the amount of money requested is proportional to the harm caused."  *Sun Life Assurance Co. of Canada v. Estate of Wheeler*, No. C19-0364JLR, 2020 WL 433352, at *4 (W.D. Wash. Jan. 28, 2020).  Because Plaintiffs seek to recover Defendant's unpaid contributions—along with statutorily mandated interest, liquidated damages, reasonable attorney fees, and costs incurred while trying to collect the owed amount—the amount of money requested is directly proportional to the harm caused.  Thus, the fourth *Eitel* factor supports default judgment.

4.      Possibility of dispute over material facts

As stated previously, "[t]he general rule of law is that upon default, the factual allegations of the complaint, except those relating to damages, will be taken as true."  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  Therefore, there do not appear to be any disputes of material fact in this case.  The fifth *Eitel* factor supports default judgment.

1

2     5.      Excusable neglect

3     The sixth *Eitel* factor assesses whether a defendant's default for failure to appear was

4     because of excusable neglect.  *Bds. of Trs. of Inland Empire Elec. Workers Welfare Tr. v. Excel*

5     *Elec. Servs., Inc.*, No. 2:21-CV-00200-MKD, 2022 WL 1243663, at \*4 (E.D. Wash. Apr. 26,

6     2022).  Generally, courts do not find excusable neglect when defendants were properly served

7     with the complaint.  *See Maersk Line v. Golden Harvest Alaska Seafood LLC*, No. C20-1140-

8     JLR-MLP, 2020 WL 6083464, at \*4 (W.D. Wash. Sept. 30, 2020), *report and recommendation*

9     *adopted*, No. C20-1140 JLR, 2020 WL 6077419 (W.D. Wash. Oct. 15, 2020).  Plaintiffs

10    establish that they properly served Defendant by personal service to the company's registered

11    agent on April 16, 2023.  *See* Dkt. ## 8, 9.  Thus, the sixth factor favors entry of default

      judgment.

12            6.      Policy favoring decision on the merits

13    Cases "should be decided upon their merits whenever reasonably possible," so this factor

14    often disfavors default judgment.  *Eitel*, 782 F.2d at 1472.  But Defendant's failure to appear

15    "makes a decision on the merits impractical, if not impossible."  *PepsiCo, Inc. v. Cal. Sec. Cans*,

16    238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also Empl. Painters' Trust v. Dahl Constr.*

17    *Servs., Inc.*, No. C19-1541-RSM, 2020 WL 3639591, at \*4 (W.D. Wash. July 6, 2020)

18    (explaining that when a defendant fails to appear, the policy favoring deciding cases upon their

19    merits does not preclude the entry of default judgment).  Thus, the seventh *Eitel* factor also

20    supports default judgment in this case.

21            In sum, all seven *Eitel* factors support default judgment.

22    C.    Damages

23    "Because the Court does not accept the amount of claimed damages as true in a default

24    judgment motion, it must assess whether Plaintiff's claimed damages are appropriate to award."

1   *Caisse de Retrait du Pers. Navigant v. Renou*, No. 2:22-cv-01002-JHC, 2022 WL 17667902, at

2   *3 (W.D. Wash. Dec. 14, 2022) (citing *Geddes*, 559 F.2d at 560).  A plaintiff bears the burden of

3   proving that its requested damages are reasonable and supported by evidence.  *Bd. of Trs. of the*

4   *Boilermaker Vacation Tr. v. Skelly, Inc.*, F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

5           If a party brings an action for or on behalf of a plan under Section 515 and secures a

6   favorable judgment, the court must award the party:

7           (A) the unpaid contributions;

8           (B) interest on the unpaid contributions;

9           (C) an amount equal to the greater of—

10              (i) interest on the unpaid contributions, or

11              (ii) liquidated damages provided for under the plan in an amount not in
                excess of 20 percent . . . ; [and]

12          (D) reasonable attorney's fees and costs of the action, to be paid by the defendant.

13  29 U.S.C. § 1132(g)(2).  Plaintiffs seek recovery for four categories of damages: (1) reported but

14  unpaid contributions for March 2023; (2) liquidated damages for delinquent contributions in

15  November 2022, December 2022, and March 2023; (3) interest on delinquent contributions; and

16  (4) reasonable attorney fees and costs incurred in pursuing this action.  *See* Dkt. # 12.  The Court

17  grants Plaintiffs' requests for all four categories.

18          1.      Unpaid contributions for March 2023

19          Plaintiffs request $39,198.52 in unpaid contributions for March 2023.  Dkt. # 12.  Under

20  the Agreements, in the event of delinquency, the Trust Funds may collect unpaid contributions.

21  *See* Dkt. # 13 at 76, 117, 151, 177.  The Pelletier Declaration and its attachments include a copy

22  of the unfunded March 2023 report and a breakdown of the requested amount.  *See id.* at 185–86,

23

24

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 8

191.  Plaintiffs have thus provided sufficient evidence to support a damage award of $39,198.52 for March 2023.

      2.       Liquidated damages for November 2022, December 2022, and March 2023

      Plaintiffs request $11,770.33 in liquidated damages for the months of November 2022, December 2022, and March 2023.  Dkt. # 12.  The Agreements generally provide that the Trust Funds may collect liquidated damages for delinquent contributions in the amount of 10 percent of the contributions owed.  *See* Dkt. # 13 at 98, 117, 151, 177; *see also id.* at 3 ("The PSEW Trust Funds assess delinquent employers with liquidated damages on all unpaid contributions at the rate of 10% of the amount of all reported but unpaid/untimely fringe benefit contributions.  Liquidated damages are authorized under the written terms of the Trust Agreements and under statutory provisions of ERISA.").  The Pelletier Declaration and its attachments provide a spreadsheet that calculates the appropriate amount of liquidated damages.  *See id.* at 189–91.  Based on these calculations, Defendant owes $4,374.37 in liquidated damages for November 2022; $3,490.38 for December 2022; and $3,905.58 for March 2023.  *Id.*  Plaintiffs are thus entitled to $11,770.33 in liquidated damages.

      3.       Interest as of June 16, 2023

      Plaintiffs request $2,484.61 in interest as of June 16, 2023, for the delinquent contributions from November 2022, December 2022, and March 2023.  Dkt. # 12.  Under the Agreements, the Trust Funds may collect interest on delinquent contributions at the rate of 12 percent a year[2] from the day they were due through to the day they are paid.  *See* Dkt. # 13 at 98, 117, 151, 177.  The Pelletier Declaration and its attachments provide a spreadsheet of the contributions owed for November 2022, December 2022, and March 2023, and calculate the

---

[2] The Pelletier Declaration lists a 10% interest rate for the "NEBF" category of payments.  Dkt. # 13 at 189–91.

interest owed on each delinquent payment. See *id.* at 189–91. Chau Electric paid the November

2022 contributions on March 9, 2023, accruing $1,117.47 in interest. *Id.* at 189. Chau Electric

paid the December 2022 contributions on March 15, 2023, accruing in $626.48 in interest. *Id.* at

190. Finally, Chau Electric has not yet paid the March 2023 contributions and as of June 16,

2023, owes $740.66 in accrued interest. *Id.* at 191. Added together, Plaintiffs are entitled to

$2,484.61 in interest on the delinquent payments.

      4.      Attorney fees and court costs

      Plaintiffs request $4,894.00 in attorney fees and $526.00 in court-related collection costs.

Dkt. # 12 at 201. Under both the Agreements and 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled

to recover reasonable attorney fees and other costs like court fees incurred in the collection

process. *See* Dkt. # 13 at 98–99, 117, 151, 178. In the Maxwell Declaration, Plaintiffs' counsel

states that he and his firm spent 22.9 hours working on this matter, at a rate of $300 per hour (or

$115 for work done by an unidentified second individual, "JMW"). Dkt. # 14 at 196–99.

Additionally, Plaintiffs' counsel reports $526.00 in costs associated with filing the case and

serving the Defendant. Dkt. # 14 at 201. The Court finds Plaintiffs' request for $4,894.00 in

attorney fees and $526.00 in other collection costs to be reasonable. The Trust Funds are thus

entitled to recover $5,420.00 in fees and costs.

## IV

### CONCLUSION

      For the reasons above, the Court GRANTS Plaintiffs' Motion for Default Judgment. Dkt.

# 12. The Trust Funds are entitled to:

      1.      Unpaid contributions for March 2023, in the amount of $39,198.52;

      2.      Liquidated damages in the amount of $11,770.33;

      3.      Interest in the amount of $2,484.61; and

1        4.       Attorney fees and costs in the amount of $5,420.00.

2    Dated this 30th day of June, 2023.

3

4    _John H. Chun_

5    John H. Chun
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 11